First case, which must be the first case. Vesta Mining, is Carl everyone here on that case? Yes. First shall be last. Right, right, right. My name is James Poerio. Are you the person who had the accident? I am, yes. Are you okay? I'm fine. I seem a little bit discombobulated. Forgive me, I hope. I do represent Vesta Mining Company in connection with this appeal. And I would like to reserve five minutes of my time for a possible rebuttal. Okay. Your Honor, this is a case of first impression regarding an interpretation of a certain portion of the regulations of the Black Lung Benefits Act found at 20 CFR adopted in 2001 to help streamline the process of identifying responsible operators liable for the payment of these benefits. And it's a case that tests the authority of the district directors to administer the program and make decisions pursuant to those regulations. Are you arguing, I don't think you are arguing, that these regulations are jurisdictional?  Or procedural? Procedural. Okay. They're procedural. What's not in dispute is most of the case. Mr. Watt filed his claim to identify two employers among the list of employers he worked for. Vesta was the next to last employer to employ him for more than one year. And the last employer that he said employed him for one year or more was R.G. Johnson. And he said that at Director's Exhibit 5. Pursuant to these regulations... Can I interrupt you for a second? What happens if... If you win, what happens? I mean, we've written opinions. We're not doing any sort of... We're talking about the incredible delay that these claims for benefits undergo. What happens if you win? Does this open up the whole thing again in terms of... No, that's precisely what these regulations were designed to avoid. What happens is that the Black Lung Disability Trust Fund becomes liable for the payment of these benefits. Why would that be? Can't they name another responsible company? Not at this stage of the proceedings. And again, that's exactly what these regulations were designed to prevent from happening. That is what happened prior to 2001 when these regulations were enacted. The cases could go back and forth, up and down forever, trying to find the right responsible operator. And the purpose of these regulations was to avoid that and make the district directors responsible before the case goes to the Office of Administrative Law Judges for finding the right responsible operator. Well, now, that's your best-case scenario. Let's assume that we agree with your argument that the... And I suppose we could... Which I might... I'm sorry to interrupt, but the governor concedes that that is the case, that that information should not have been considered. Well, okay. Is the proper remedy, then, to send it back all the way down to the district director to reconsider without that as part of the record? No, the proper remedy is to dismiss VESTA and make the Black Lung Disability Trust Fund liable for the payment of these benefits. Will you go to that directly, or will you be mandated with the instructions? We'll be mandated with those instructions, but that will be the result. There's no further discretion on the part of the district directors at that point. Well, you... All right. Well, if evidence was improperly admitted, you're asking us as a matter of... I guess as a matter of law to say that... To reach a conclusion as opposed to, hey, tribunal hearing this in the first instance. Don't consider that evidence that was improperly granted. That's correct. That is the scheme that's set forth in the regulations. That is what is the intended result, and that is why this is such... Hold on. Which regulation would say that? Your Honor, I have to tell you the truth. It's been so long since I read the regulations from start to finish that I didn't focus on that. I'd have to find that specific section. You actually said that you read these regulations from start to finish? I have read them from start to finish. God bless you. It's not something that I wanted to do because I didn't focus on that at this point. It's a law school. You said something. I hope I get to read these start to finish. That was UCC. That's one of the many things I said in other positions in this case. If this had never happened, if R.G. had submitted its... That's R.G. Jones. I'm confused between R.G. and R.J. It doesn't matter, but it's R.G. If R.G. had submitted its documents on time, the exact same result, I assume, would have pertained because Juan didn't work with R.G. for more than a year. He worked, I guess, what, nine months? I don't know that that's true. That is the finding that was made. But I would point out to you that the evidence that the claimant submitted when he submitted his application is that he worked for R.G. Johnson for more than one year. That's a statement he made. I think he said he had to check the payment records. He said he had to check the Social Security records. The Social Security records reflected the amount of pay, which would clearly suggest that he wasn't with R.G. for an entire year. I don't think that's true. I think that's what the ALJ found, the district director found. But I believe that what ALJ showed is earnings, annual earnings, not quarterly earnings, in both of the years that the claimant says he worked for R.G. Johnson. And so there's no way from the Social Security records alone to determine if it's more than 365 days or less than 365 days. Moreover, what R.G. Johnson did submit and which was stricken from the record is not employment records. They are simply payroll records. They show when the paychecks were issued. That's not necessarily the same thing as the length of employment. But if R.G. Johnson did what he was supposed to do, if he had not been asleep at the switch, then it's your obligation, right? Potentially so. So if we were sitting here as a court of equity, it seems to me you'd be skating at best on very thin ice. But fortunately for you, we're not a court of equity. It's another way of saying, to me, equitably speaking, you have a very unsympathetic case because the fellow worked for your company for a very long period of time. He didn't work for Johnson for the requisite one-year period. So in a perfect world, your client should answer for his damages. But what's your best legal argument to get around what seem to me to be terrible equities against you? Section 725.412 of the regulations, subpart B, specifically states that if, as in this case, the punitive responsible operator, which is R.G. Johnson, does not file an operator response and does not submit additional evidence, they are deemed to have admitted, accepted their designation as the responsible operator, and they have waived any further contest to their liability as the responsible operator. It is a specific regulatory section. It's exactly what these regulations are designed to do. They impose upon both the punitive responsible operators as well as the government the obligation to get it right. And I do not concede that, for purposes of this discussion, I do not concede that had R.G. Johnson done what it should have done in a timely fashion, this would be the right result. Why doesn't the agency have, the district director have the inherent authority to waive its own regulations in an appropriate case? The district director has authority to interpret the regulations, but there's no, I know, no authority to simply disregard regulations properly enacted. And that's what the district director has done here. They've pretended these regulations... Let's look at it not in terms of disregarding but waiving. Let's assume that what happened here was the district director got all the records in, saw the incredible amount of time that he worked with VESTA, saw the relatively small amount of time he worked with R.G., and decided that, well, you know, R.G. shouldn't even have any records in front of me, but it seems to me the appropriate result here is that VESTA pay. And that's what I'm going to do. Why can't the director of the agency ignore its own regulations? Well, there's a regulation specifically on point that requires, in this situation... Right, but if the regulation was specifically on point, it wouldn't have to waive its own regulations. The question only comes up because there is a regulation right on point. With a regulation right on point, which you conceded at the outset is not jurisdictional, why can't it waive its own regulation? I don't believe there's any statutory, any regulatory, or any case law authority that could allow it. Well, the Supreme Court said in Kendricks, I don't have the full name or site of the case, it's referred to in a dissent, the Justice Serious Order, in a case called Bowers, which is a recent case, Bowers, last summer with a habeas petitioner who was out of time, filed the petition within the amount of time the district court told him he could file, but that district court went wrong and he was, in fact, out of time. And Souter makes mention there between, and he's referred to by three of the justices. In that case, clearly he's not controlling on us, but Kendricks is. And he talks about the difference between procedural requirements and jurisdictional requirements and says that, and says Kendricks held that where a requirement is jurisdictional, obviously you can't change that, an agency can't, a court can't, but where it's only procedural that any agency or court has the inherent authority to waive its own regulations or even statute or rule. Now why aren't we in that situation here? This is something which is purely procedural. Why can't the procedural regulation be waived by the agency? The only answer I can give to that, Your Honor, is that to do that and to allow the director to do what happened here is to render these regulations a nullity. There is a very detailed series of regulations here about how this process is supposed to go, and the regulations mean nothing if this result stands. In terms of the equities, since the court is focused on the equities, my suggestion to you is that the equities here are in favor of VEFSA as between these two operators. R.G. Johnson ignored the process. R.G. Johnson came forward eight months after the first notice. They didn't offer a good cause. They didn't offer any excuse at all. They just asked for an opportunity to start submitting evidence. That evidence was stricken from the record, and the government concedes the evidence can't be considered. If you look at the regulations, there's no harm here to the claimant from reaching the right result that the regulations compel, which is if the medical benefits award is sustained, of making the government responsible for those benefits. The government is the one that made the mistake here. But now Johnson's off the hook, too. It's the government's fault. What were the mistakes? Had you been on the government's side here, what would you have done differently? What should have happened? They should have awarded the claim on the basis and made R.G. Johnson liable for the benefits. And if R.G. Johnson wanted to contest that, they would have been stopped from contesting their liability as responsible operator. They wouldn't have had the opportunity to go to a hearing on the claimant's medical eligibility. So everyone was asleep at the switch except Vesta, the party that ultimately should have paid the benefits. That point, Your Honor, with all due respect, I do not concede to be accurate. I believe the record before you... Tell me why. Because the record before you shows that the claimant's history of his employment from his records, his recollections, is more than one year. But that was an error. I don't believe it was an error. The payroll records do not establish the length of employment they established when he was paid, which is not the same thing for black lung benefit purposes as how long one is employed. I requested, as the record would show, before the Department of Labor issued his schedule for additional evidence and issued his proposed decision that R.G. Johnson be required to come forward if they're going to be allowed to contest this case with a personnel file that shows when the claimant was hired and when the claimant was fired. All of that was disregarded by the government, by the Department of Labor, when it issued its proposed decision in this case. So that was discredited. They never came forward with the personnel file? Never did. And the record here will show you multiple pieces of correspondence that I sent to the Department of Labor, a copy to R.G. Johnson as well, separately to R.G. Johnson, a copy to the Department of Labor, asking for this information all while contesting the reopening of the record for any additional information on employment from R.G. Johnson. Did you reserve any of your vote? I did. Okay, thank you. We'll get back to you in a minute. Mr. Drenner, you're going first or Ms. Cohen? I'll be going first. You're on. Oh, you said Cowan, right? Not Cohen? Cowan. Okay. May it please the Court, my name is Barry Drenner, and I represent the Director of the OWCP. What happens if it does go back? Is Mr. Quarrel right that the fund is on the hook? It doesn't go back to R.G., it doesn't open up again, the fund is on the hook? That's correct, Your Honor. The regulations provide that the Department only gets one chance to name a responsible operator. There would be no issue with contesting liability or block on? The Department awarded benefits on this case, did not appear before the ALJ to contest Mr. Wah's liability, so I believe, yes, the Department would be on the hook. In the usual case, how long does that take if it gets remanded back before the check is cut? I believe Mr. Wah is currently receiving benefits paid on an interim basis by the Department based on the awards by the District Director and the ALJ. As to making that final, it would be a period of a few weeks or months. I didn't realize that. So the way it works is once the eligibility determination is made, checks start going, I assume, from the fund. Meanwhile, the operators fight it out to see who is the responsible operator. Once that determination is made, the fund is on the hook, the operator is on the hook. If that determination is never made or is made in error, the operator never goes on the hook, the fund stays on the hook, and the dollars are exactly the same? That's correct, Your Honor. What happens is if the District Director awards benefits, the operator then has an opportunity to decide whether or not they want to begin payment. If they don't, the statute and the regulations provide for the Department to begin making payments. The statute and regulations indicate that if the ALJ affirms that award of benefits, the operator should begin making payments at that time and that the Department can attempt to enforce the award against them. But as a practical matter, that often doesn't happen. The operators continue not to pay until there's been a final adjudication of the case. I'm not familiar with the payment status of this case, whether or not payments are currently being made by VESTA or by the Department. Okay. Your adversary said you, and I could have this wrong, but do you concede that the evidence, that the payroll records were properly considered? That's correct, Your Honor. The regulations are quite specific in that R.G. Johnson had a very limited time to submit evidence regarding whether or not Mr. Wall worked for them for at least one year, and they did not meet those time requirements, nor did they request an extension of time within the allowable time frame for such an extension. The District Director made a mistake in accepting that evidence and in granting it. I don't know if that means that the agency has the authority to overlook, but to amend its own regulations. You're not making the argument that was arising out of my questions to your client. No, Your Honor, we're not making that argument. Then why are we here? You should have gone for the phone call. Your Honor. He would have had to run his car into whatever ran into his car or whatever ran its car into him. Well, I noticed in your brief, I don't want to say it was somewhat disingenuous, but you came out at first with R.G. Johnson as the responsible operator. Then you received the payroll records improperly and then changed your decision. Now you're saying that the payroll records shouldn't be considered. That's correct. Then you said you were right. There was stuff in the record to support a finding that VESTA actually should be liable. How does that work? Well, Your Honor, the district director, when he made his initial determination in the schedule for the submission of additional evidence that R.G. Johnson employed Mr. Wall for one year, he made that determination, it's at page 132 of the appendix, said that he worked for them for at least one year based on the Social Security records. Ben also noted that R.G. Johnson had not responded to the notice of claim. Right. However, that's not a final determination. The district director's final determination does not come until the issue is a proposed decision in order. When that happens, the regulations give the district director very broad discretion to take another look at the responsible operator determination because of the fact that we only get one chance to get it right. Well, but then I think that the next notice, I'm not sure what the piece of paper was, I don't have it in front of me, but didn't it say based on those payroll records we find VESTA? So if you cut that out of the equation, what do you have? Don't you go back to R.G. Johnson? I don't think so, Your Honor. The district director would have had another opportunity to look at the question of whether or not R.G. Johnson employed the gentleman for a year. Mr. Wah, when he filed his claim, filled out a coal mine employment history form. He said he worked for R.G. Johnson from June of 1989 through May of 1990. That is exactly a one-year period if he began on June 1st and ended on May 31st. The Social Security records, however, clearly show that he worked for less than a full year. He earned $18,000 for R.G. Johnson in 1989 in a seven-month period from June to December. But isn't the point that it satisfied the director in making his preliminary? I mean, it's easy to see the improperly admitted evidence and say, oh, I was wrong. That's my point. He was satisfied with the evidence properly admitted that R.G. Johnson was responsible. That was the preliminary determination. I will point out, however, clearly there was some question in the district director's mind as to who the proper responsible operator was going to be because notices of claim were issued to both R.G. Johnson and VESTA. What's more, when the schedule of additional evidence was issued, the district director, although they named R.G. Johnson as the putative responsible operator at that point, VESTA was not dismissed. The district director has the discretion to dismiss other operators at that point. But I think there was still a question in the district director's mind at that point. And so the district director could revisit that issue once he got to the stage of issuing a proposed decision and order. Let me ask you then what I asked your answer. I guess it's a question of what you're actually looking for. Are you looking for a remand to the district director to have him consider the record without the improperly, I guess, admitted evidence, as it were, to make a determination? No, Your Honor, we're not. We believe that the court should simply affirm. They can't do that. They can't make that. I think that's right, Your Honor. So again, why are we here? I think what we're here for you is to ask this court to affirm the decisions of the administrative law judge and the benefits review board. But you're conceding that the decision that you want to affirm is erroneous. I'm not conceding it's erroneous. Well, I guess you are. You're saying that it's based upon evidence which is improperly admitted. I think you're also saying it's erroneous because the employment records don't necessarily conclusively establish that Vesta should be on the hook here. I would disagree with that, Your Honor. I think the records do conclusively establish that Vesta is the most recent operator that employed him for a year. What happened here is the district director looked at evidence he shouldn't have and made a decision. Okay, and you're conceding that and you're not arguing that that's already had the inherent authority to do that. So given that, it seems to me you're basically making the same argument that your opponent for Vesta is making, that the award to Vesta arises out of an erroneous process, is tainted and can't stand because it's based upon improperly considered evidence. So, again, when you pick up the phone and you say, look, we're going to send it back to the district director and get a check, get these benefits coming to you out of the fund, you say, I'm missing something. I think what happened here, Your Honor, is the district director, the ALJ, the board, they all reached the right result in the end. They named the correct responsible operator. Okay, well, you have, it seems to me, taken all of the arrows out of our quiver to get that direct result into the form of some kind of a judgment. The only way we can get there is to say that there's something about these regulations which allows the agency to overlook them. And the fact that the evidence was improperly before the district director doesn't matter because the district director has the authority to either waive the rights or however you want to look at it. And therefore, the award to Vesta can stand. I don't know how we can lie about that argument. What we're arguing here is essentially that the district director's consideration of that evidence was harmless error. That what happened here is that there is more than sufficient evidence to show that Vesta was the responsible operator. Vesta did not contest that they meet the definition of what's referred to as a potentially liable operator under the rules. They came forward with no evidence that any subsequent operator met that definition. Your Honor, what if it's Mr. Prorio's argument that the rights are a farce? If one has a situation, you ignore the timelines, and you send in some stuff, and if you get the right result, fine. If you don't get the right result, fine. Time limits don't mean anything. It's all a farce. That's what he's arguing. That's not correct, Your Honor. What the regulations provide is that if operators don't respond, certain defenses are stripped away from them, including the right to defend the claim, period. Unless you wake up and decide you don't feel like enforcing it. Well, Your Honor, isn't that the problem? I tend to agree with you, Counselor, that the right quote result or the equitable result is that Mr. Prorio's client is probably the responsible operator. What concerns me is it got to the right result through the ultimate and kangaroo court procedure. All of the requirements that Johnson was supposed to meet in order to protect its rights, none of them was met. Then, to make matters worse, the government didn't pick up the ball and save Johnson from itself and do what it could have done at the appropriate time. And then when it was all past time to do all the right things and get it right, now the government is saying, well, okay, now we got it right, and Vesta, it's your bill. That strikes me as a kangaroo court procedure. Well, Your Honor, I don't think it was past time, the time for determination. The critical time for determination of the responsible operator is when the director issues a proposed decision in order. And at that point here, there is a director named Vesta. And let me just, I'm sorry to interrupt again, but in the meantime, Vesta has expended countless hours of its corporate time, countless thousands of tens of thousands of dollars of legal fees. If the issue had been joined when it should have been joined, and a decision was made adverse to Vesta, Vesta can take its lumps and go home. But instead, it gets led down the primrose path. It continues to fight. It continues to win. It continues to win. And then you pull the rug out from under it. Isn't there something inequitable about that? Your Honor, it's important to remember what the regulations say. The regulations do not say that the district director must designate a non-responding operator as the responsible operator. It does not say that the failure of an operator to respond confers some sort of immunity on any other company. Yeah, but the designation has got to be based upon something. And you're saying that all the regs say is that the person X, company X cannot detest liability. But the finding of liability has got to be based upon something. You're conceding here that the finding was improperly arrived at because the evidence that was relied upon for that finding, the director should never have looked at. That's correct, Your Honor. But I think there's other evidence which would have compelled the district director to reach the same conclusion. Well, just to report, you're saying they're not, that those Social Security records, the records that were before the director may have suggested, I'm not sure he's conceding that, but they may have suggested that Vesta was the responsible operator, but it didn't really establish that. I would disagree with that, Your Honor. The board indicated as such in its decision. Mr. Wah, as I said, his employment history form, Social Security records indicate a very small amount of Social Security earnings. The ALJ specifically found, and Vesta never contested, that he only had one month of employment with R.G. Johnson in 1990. What's more, at the hearing in this case, even though that evidence was not before the district director, Mr. Wah was specifically asked by his counsel, who was the last company that you worked for for a period of one year? And he said it was Vesta Mining. Given my time is up, I'd be happy to answer any other questions. Thank you, Your Honor. Ms. Cowan? Good morning, Your Honors. May it please the Court, my name is Cheryl Cowan, and I represent Charles Wah. Is he getting checks now? Well, this is the sad fact of these regulations. He gets checks, but he can't spend them. Because if, in fact, the decision is overturned, the Department of Labor then comes back to Mr. Wah and says, Oh, by the way, you got checks worth $40,000. Maybe we can fix that.  Realizing the situation that your client is in, he may be willing to commit on the record to not filing any kind of proceeding against Mr. Wah, if Mr. Wah were to go and cash those checks. Why don't we just, for a second, speak to Mr. Joyner? Your Honor, I don't think he has the power to do that. Because what happens then is... It doesn't seem that the DWCP and the Department of Labor are not the same entity? Well, there's a whole set of regulations that then come into play as to how the money is recouped. The regulations probably don't mean an awful lot. Well, Mr. Wah, ironically, is the part of you... It's the minor who always gets stuck in the middle. For how long has he been getting checks? Well, he's been getting checks since the Department of Labor actually made their initial determination that he was entitled to benefits. But the way that works is they tell you, very frankly, to set up a bank account, to deposit the checks into the bank account. Because if you spend the money and the decision is later overturned... To construct a trust for whoever wins his proceedings. They come back and they ask for the money back. You, as the claimant, can keep the interest. How much money is in the account? That I don't know. Can you ballpark it? $50,000? $10,000? I think his benefits right now are approximately $500 a month. And he's been receiving benefits since the initial determination, which would have been, I'm going to hazard a guess, in 2004. So $18,000, $20,000 maybe? Right. So if that money has to be turned back in, I assume that money that he lost gets replenished from the trust fund, correct? Repeat that again, Tom? As I understand it, you're saying that he would have to turn that money back in if we reverse the decision below. But then the fund would have to pay him, would it not? No, it's actually the fund that's paying him right now. The responsible operators never pay. If we remand the case with an order that the fund has to pay, why doesn't he get to keep the money that the fund has to pay him? He will. If that's what you do, if you say we want this case remanded back, we want Vesta Mining dismissed as the responsible operator and the trust fund is on the hook for the money, he will then be able to go to the bank and spend his money. So you're okay with that result? You're happy with that result? Mr. Watt doesn't care who ultimately is paying him his benefits. He would just like to get them. He wants to be able to use them, not just have them. It's nice to use them. Correct. Yours is the threshold issue. If you get that, then it's up to these two guys as to who's paying. That's correct. Again, there's a whole set of regulations as to they actually come at you. I've had clients that the government has put a lien against their property for their money because they spent it. So I tell every client, please do not spend this money. But if an order goes out instructing the agency to pay through the fund, then you have the legal order that you need to make sure your client gets his money. That is correct. All right. Let's take a brief break for a second. Please rise. If you're willing to sit down and wait the rest of your time. And Mr. Poirot, if you're willing to wager a bottle, maybe we can end this mess. Do you mind? Your Honor, I can read between the lines. I have no objection. These are some real big lines. We're like our first grade pencils here. Unfortunately, we've talked about it in long overdue situations. Kowalski, this is not that kind of a situation. But it is a situation where there's some guy out there whose health is in peril because he gave so many years of his life to going down to the ground to dig out the coal and let the rest of us run our air conditioners and watch our color TVs and generate power. And now he's trying to get some benefits so that he can enjoy what few years he has left. That's all by claim. Well, that's not the order. But an appropriate order will be forthcoming in writing along with a very brief and succinct non-presidential opinion. It is hereby ordered that it is clear, based upon the admission of the counsel for the OWCP, Mr. Joyner, that the award here is based upon evidence that was improperly before the district director. It was evidence that should not have been considered had the district director followed its own regulations for a time limit. Therefore, whether or not Vesta Mining is the responsible party here, the award against it is based upon evidence which ought not to be considered. And the award against Vesta Mining is hereby vacated. The matter is rescinded back to the district director with instructions that the fund is to begin making payments to Mr. Wall forthwith. Given that resolution, it's further ordered that Mr. Wall is free to cash the checks that he has already received, spend the money that is in his account, and he can do that relying upon this court order without the fear of any kind of repercussion from the board or from anyone else in the fund coming back on him for having spent those funds. Anything you can say? I think that the petition for review is denied as to the... Technically, that's what's happening. The petition for review is being... The petition for review is being granted. Of the AOJ's award of benefits to Wall. Yeah, but that's not... The only thing really before us is the award against Vesta. And that's being granted. Come up to the mic just so we can hear. Your petition is being granted. I just want an answer to your question about the order. We also appealed the underlying award that he's eligible for the benefits, so your order ought to affirm that part of the AOJ's decision. Okay, I thought you were not... I asked you if you were contesting his eligibility for benefits, and you said you weren't. Oh, I misunderstood the question. That is part of our appeal. Okay, so that part of the appeal is being denied. You're basically abandoning that portion of your appeal. Well, in light of the order you just orally made, I'm happy to do so. Okay, and to the extent that there has been any prior challenge to the award of benefits to Mr. Wall, then that award is hereby upheld and affirmed. And as I said, a written order to that effect, and a very brief NPR will be... Yes, I'd like to say something. Your Honor, I just want to make it clear. Can you come up to the mic? Sorry. I apologize. Attorney's fees in this particular case, we generally send a fee to the court for the attorney's fees and the cost of the claimant for that period. Because he has had an opportunity to oppose the amount of the fees as opposed to the fact of the fees, and so now we can take care of... Okay, but I still do that to this court, correct? Well, but maybe we can handle that now. Why would the fees be assessed against the prevailing party? If fees should be assessed against anyone, it should be the department. Well, it would be against the department if they're deemed the responsible party. Yeah, but the department is the amount of the fees. But I'd rather you take a more careful look at that. Okay, I just wanted to make sure I was going to do it properly. Thank you. But I would expect that you would be, as the prevailing party, Mr. Wall would be entitled to fees and costs. I think the only issue is the amount of the fees and maybe where they come from. That's what Ms. Harden is asking about. Okay, thank you. Who pays the fees. Okay. Okay. We're going to have to take it under a matter of advisement. We can recess. Please rise.